Chief Justice Robertson
.lehvemi the Opinion of the Court.
In the year 1810, John M. Lowther, resident in Montgomery county, Tennessee, made and published the following will, which was, in the same year, duly proved and admitted to record in the Court of Pr obate, in the said county—
“I, John tVl. Lowther, of Montgomery county, and state of Tennessee, do hereby ordain, &c. 1st. I give to my beloved wife Nancy Lowtner, one moity or half of negroes Sail, Tilly, and Peter, together with all my household furniture (except one bed and furniture,) my farming utensils, and my stock of *284 cattle, hogs and sheep, and my sorrel mare and her two fillies. And also my plantation and laud during her widowhood. 2. 1 give to (my) son, William Lewis, my land and plantation alter his mother’s death, or termination of her widowhood, and my negro boy Charles. 3. I give to my daughter Minerva one moity, or one half of my negroes Sail, Tilly, and Peter, a bed and furniture, and a hoise, bridle and saddle, when she arrives to maturity — . which horse, bridle and saddle, is to be made or come out of the pro¡ e.'ty I have given my wise Nancy, and which horse, bridle and saddle, shall be worth one hundred dollars My cotton gin, the surplus bacon, if any, the board of James Blanks and Pallas Cooper, to appropriate to payment of just debts. My sorrel horse shall be sold to the best advantage for cash, which shall he appropriated to the use of my wife, until the maturity of my son William Lewis, when she shall make or give to him a horse, saddle and bridle, worth one hundred dollars. My wife is to and shall have my children educated out of the property given to her and them. In testimony, &c.”
It seems that about four or five years after the death of J. M. Lowther, his widow was married to David Davis, by whom she liad two children (the defendants in error) — that not long after the death of the second husband (Davis) — tne wife surviving— William Lewis Lowtaer, one of the devisees, died (in Tennessee) intestate and childless, and before he had attained twenty one years of age; that, after-wards, Nancy Davis, (the former widow of J. M. Lowther) removed to Kentucky — where she died intestate, m the y; ar 1823; and that the plaintiffs in error— í humas N.ipier and his wife (Minerva one of the devisees) intermarried when she was only about fourteen years old, and had acquired the possesion of Tilly prior to the death of Mrs. Davis, who retained the possession of the other slaves and their issue until her death And all of whom were retained by tiie administrator upon her estate until August, 1828, when the county court of i odd county, made an or-'er directing the administrator to do ■liver them to Napier and wife.
By the s(u~ tu¡es ol I ennessee brothers and sisto's of ball blood take equally with those of the full blood of d-oeused bn tiler’s or sister’s 0-St.ate, whether real or personal.
To enjoin the order of the county court (which ap tears to have been tx parte) and to obtain partitio i of the slaves, the defendants in error (the children of Mrs. Davis by her last marriage) filed a bill in chancery against Napier and wife, and other persons, who held the slaves on hire from the administrator. Alter stating the foregoing facts, the hill alleged that Mrs. Davis, for herself and the defendants in error, had, prior to 1822, made an amicable partition of the slaves with Napier and wife, and liad .delivered to them, in consequence thereof, Cintiles and George — that afterwards, sometime m the ) ear 1822, she (Mrs. Davis) purchased all the right of Napier and wife in the siaves, Charles and George at a sale under a fieri facias in her favor against Napier.
The answer of Napier and wife denied the alleged partition with ,vsrs. Davis, and preferred large claims for hire since the marriage with Davis, whereby, (as they insisted) all her light, as devisee, expired. The answer was made a cross-bill. Jin amended bill was filed, insisting that the devise by J. .VI. Lowther to his wife was {with the exception of the land) unlimited.
Neither the cross lull nor amended bill was answered. The circuit court decreed that Napier and wife were entitled to one half of all the slaves except Charles and George — to one ninth of Charles and to one third of George, both of whom were directed to be sold; and appointed a commissioner to make partition and sale accordingly. - To reverse that decree, this writ of error is prosecuted with a supersedeas.
When Mrs. Napier attained twenty one years of age, and not until then (which was in 1828,) one moitv of all the slaves except Charles vested in her a I her husband in consequence of the devise to her. Upon the death of her brother, he became entitled to only one third of Cliarles by the operation of the law of Tennessee, according to what we deem the true import of the statutes certified in this case as the law of that State, and the reading of which was not objected to by the plaintiffs. According to our interpretation of those statutes each of the defendants was entitled, as a sister of the hail’blood, to one *286 third, and Mrs. Napier, though sister of full blood, to only one third of the estate, real and personal, of their intestate brother. But the records and proceedings in Tennessee, in 1822, and which were read without objection, shew that all the interest of Napier (the husband) in Charles, was bought in 1822 by Mrs. Davis, under an execution which had been issued in her favor against him, and levid on Charles. We therefore suppose that, as the interest of the wife (one third) had vested absolutely in the husband, that interest passed to Mrs. Davis in consequence of the sheriff’s sale — and was, after her death, distributable, according to the law of this state, (where she died) equally among her three daughters — and, of course, Napier and wife are entitled to only one ninth part of Charles.
Deviso, by husband to ■wife of properly, real and personal, “during her widowhood,” forfeited upon the marriage of the widow, and property construed to pass to the heirs of tho dcvi'or, tho’ no Jimitaiion over of negroes nr nersonal property-
Wo are of opinion that the interest devised to the widow (afterwards Mrs, Davis) was forfeited by her subsequent marriage, and that, thereupon, Mrs. Napier and her brother, William Lewis, became entitled to the whole of it as the only legal distributees of their father. The will was not drawn with as much precision as is always desirable and important in such cases; and therefore the intention of the testator may be somewhat doubted. But taking the first clause of the will by itself and construing it according to the letter — the punctuation, the rules of grammar ami of common sense, it should be interpreted, we think, as limiting her entire interest to her life or widowhood. The whole will, taken together, does not change the import of the isolated devise to the widow. There is nothing in any other part of the will which is ■ inconsistent with our construction of that clause, or which tends to establish any other interpretation. On the contrary, we are inclined to the opinion, that the will, as a whole, tends to fortify our construction of the first clause, and, altogether, evinces a determination that the testator’s wife should hold no part of his estate, as devisee, longer than she should live in widowhood. 'We deem it unnecessary to enter into a consideration of all the various reasons which might be urged for and against this conclusion. We are content with stating the result of a careful and thorough survey *287 which we have made of all the provisions of the will in all their hearings. The necessary con«eqnence of this view of the case is, that, as Mrs. Napier was entitled, as devisee, to one half of George, and, as distributee first of her father, on her mother’s marriage, to one fourth and next to one twelfth, as a distributee of her brother, ten twelfths had vested absolutely in her husband prior to the sale under the execution. That interest was transferred by that sale to Mrs. Davis — and was distributable, after her death, among her three children — consequently each of the defendants was entitled to one twelfth as a distributee of their half brother and- each of-them, as well as Napier and wife, is entitled to one third of a tenth, as distributees of their mother.
Outer of county court íá'tratortodeliver over slaves to oer8on claiming, not conclusíví;of (!“e ties.3 °* par'
The decree of the circuit court is therefore erroneous. The claim to hire seems to have been pretermitted; and the record, as it now stands, does not enable this court to decide upon it definitively. On the return of the cause, the parties may be permitted to litigate that, as well as all other matters growing out of the will, and which are not concluded by this opinion. The interest in the slaves will not, of course, be subject to further controversy. Ten twelfths of all, except Charles and Geor.ve, belong to Napier and wife. Two twelfths to the defendants: and Charles and George (as the interests in them are indivisible) should be sold, and the proceeds distributed in the proportions settled by this opinion.
The order of the county court cannot, from any thing appearing in this record, be deemed conclusive as to the right to the slaves; and therefore we have considered the case as we should have done, if no such order had ever been made.
And as to the sale of George by the-sheriff, we have not deemed it necessary to decide whether the interest of Mrs. Napier to one moity as devisee w'as, at that time, such as was subject to execution; for, in distributing the respective interests of the parties according to the principles of equity, we are of opinion that the sale should be regarded as passing the entire interest of the husband, as ™r"l! that which *288 Was prospective as that which was certain and then act,ial possession and enjoyment, especially as we do not know that, by the law of Tennessee, the under the will was not liable to execution, before the devisee had attained twenty one years of age.
Chancellor will not subject defend ant’s oslato in Kentucky to tile satisf'io tion of ju Ig menis of another State, upon mere allegation of existence of such judgmerits unsatisfied ; if judgment debtor complainant, he might be subjected to conditions before relief granted.
Cunningham and Monroe, for the plaintiffs; More-head and Breathitt, for the defendants.
As to so much of the bill as prayed for a decree subjecting the interest of Napier and wife to the satisfaction of the Tennessee judgments, we shall only observe that, as Napier and wife were not. complainants seeking the interposition of a court of equity, anti therefore in an attitude which might have authorized a chancellor to exact, from them equitable concessions as a condition to relief sought, no decree subjecting their estate in Kentucky to the judgments in Tennessee should he rendered without other aliegations, and proof of other facts than any now appearing.
Decree reversed, and cause remanded, with leave to answer the cross and amended bills, and for such other proceedings as shall be proper and consistent with this opinion, if the parties shall elect to proceed further in litigating matters not concluded by the principles herein settled, but, otherwise, with instructions to enter a final decree between them upon the whole case as now presented, and according to the foregoing view of it by this court.